UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

|  |  |  |
|---|---|---|
| _____ | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| JOHNSON MEMORIAL CORPORATION, | : | Case No. 08-22188 |
|  | : |  |
| Debtor. | : |  |
| _____ | : |  |

# **PLAN OF REORGANIZATION**

Reid and Riege, P.C.
One Financial Plaza
Hartford, CT  06103-2600
P 860.278.1150
F 860.240.1002
*Counsel to the Debtor*

March 11, 2010

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| _____ : | | |
| In re | : | Chapter 11 |
| | : | |
| JOHNSON MEMORIAL CORPORATION, | : | Case No. 08-22188 |
| | : | |
| Debtor. | : | |
| _____: | | |

## DEBTOR'S PLAN OF REORGANIZATION

Johnson Memorial Corporation, the above captioned debtor and debtor-in-possession,

proposes the following plan of reorganization pursuant to Bankruptcy Code section 1121. All

capitalized terms used in the Plan are defined in either Bankruptcy Code section 101 or Article I

below.

Briefly stated, but subject to more specific details provided herein, the Plan provides for

the reorganization of the Debtor. Although the Debtor's case has been jointly administered with

the cases of The Johnson Evergreen Corporation, Inc. ("JEC"), and Johnson Memorial Hospital,

Inc. ("JMH"), the Debtor, JEC and JMH and their estates have not been substantively

consolidated. Accordingly, this Plan is a plan for the Debtor only, JEC and JMH have filed or

will file their own plans.

17469.034/501182.1

## ARTICLE I
## DEFINITIONS

A.      As used in this Plan, the following terms (which appear in this Plan as capitalized terms) shall have the meanings specified below:

1.      **"Administrative Claim"** means any Claim for an administrative expense of the kind described in Bankruptcy Code section 503(b), including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate incurred after the commencement of the Case and prior to confirmation of this Plan, any actual and necessary costs of operating the Debtor's business after the commencement of the Case and prior to confirmation of this Plan, any indebtedness or obligations incurred by the Debtor in connection with the operation of its business or for the acquisition or lease of property or the rendition of services after the commencement of the Case and prior to confirmation of this Plan, any fees and expenses allowed under Bankruptcy Code sections 330 and 331, and any fees due to the Office of the United States Trustee under 28 U.S.C. section 1930(a)(6).

2.      **"Allowed"** means, with reference to any Claim, (a) any Claim to the extent it has not been withdrawn, paid in full or otherwise deemed satisfied in full and proof of which has been filed on or before the date designated by the Bankruptcy Court for filing proofs of claim (or, if not filed by such date, filed by such other date as the Bankruptcy Court orders), or, if no proof of claim is filed,  any Claim that has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount, not disputed and not contingent and, in all cases, a Claim as to which no objection has been filed, or as to which an objection has been filed and such Claim has been allowed in whole or in part by a Final Order, but only to the extent allowed by such Final Order, and (b) any Claim allowed pursuant to this Plan.

3.      **"Bankruptcy Code"** means title 11 of the United States Code, as in effect on the Petition Date.

4.      **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Connecticut, Hartford Division.

5.      **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut, the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the District of Connecticut, and any standing orders of the Bankruptcy Court, each of the foregoing as in effect on the Petition Date.

6.      **"Business Day"** means any day other than a Saturday, a Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

7.      **"Case"** means the chapter 11 case commenced by the Debtor on the Petition Date and pending before the Bankruptcy Court.

8.      **"Cash"** means legal tender of the United States of America.

9.      **"Claim"** means (a) any right to payment or return of property from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10.     **"Class"** means each class of Allowed Claims established pursuant to Article III of this Plan.

17469.034/501182.1

11.     **"Committee"** means the Official Committee of Unsecured Creditors appointed in this Case.

12.     **"Confirmation Date"** means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

13.     **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

14.     **"Creditor"** means an entity that has a Claim against (a) the Debtor that arose at the time of or before the Petition Date or (b) the Debtor's estate of a kind specified in Bankruptcy Code section 502(g), (h) or (i).

15.     **"Debtor"** means Johnson Memorial Corporation, Inc., as debtor and debtor-in-possession under the Bankruptcy Code.

16.     **"Disclosure Statement"** means the Disclosure Statement For Plan of Reorganization approved by the Bankruptcy Court in connection with this Plan pursuant to Bankruptcy Code section 1125, and any exhibits or duly authorized amendments thereto.

17.     **"Disputed"** means, with reference to any Claim, a Claim that is not an Allowed Claim.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection unless there is another basis to designate such Claim as a Disputed Claim.

18.     **"Effective Date"** means (a) the first Business Day after ten days have elapsed following the Confirmation Date provided no stay of the Confirmation Order is in effect or (b) if the Confirmation Order has been stayed by a court of competent jurisdiction, the first Business Day following the date on which such stay is no longer in effect; provided, however, that if on or

-4-

prior to such date all conditions to the Effective Date set forth in Article VII of this Plan have not been satisfied or waived in accordance with the terms of Article VII of this Plan, then the Effective Date shall be the first Business Day following the day on which all such conditions to the Effective Date have been satisfied or waived.

19.     **"Entity"** means a person (as defined in Bankruptcy Code section 101(41)), estate, trust, governmental unit (as defined in Bankruptcy Code section 101(27)), and the United States trustee.

20.     **"Final Order"** means an order, ruling, judgment or decree of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which the time to appeal or to seek certiorari has expired and as to which no appeal or petition for certiorari or rehearing is pending or as to which any right to appeal or to seek certiorari or rehearing has been waived in writing in a manner satisfactory to the Debtor.

21.     **"Intercompany Claim"** means any Claim against the Debtor by JMH or JEC.

22.     **"People's Secured Claim"** means the Allowed Secured Claim of People's United Bank in the approximate amount of $3,540,000.00, secured by the Debtor's real property and certain of the Debtor's personal property.

23.     **"Petition Date"** means November 4, 2008.

24.     **"Plan"** means this Plan of Reorganization and any exhibits or duly authorized amendments hereto.

25.     **"Priority Non-Tax Claim"** means any Claim entitled to priority under Bankruptcy Code sections 507(a)(3), (4), (5), (6), (7) or (9) to the extent it is an Allowed Claim.

26.     **"Record Date"** means the date of the order approving the Disclosure Statement.

17469.034/501182.1

27.    **"Releasee"** means, solely in their capacity as representatives of the Debtor, each of the Debtor's current and former officers, directors and employees.

28.    **"Reorganized Debtor"** means the Debtor on and after the Effective Date.

29.    **"Schedules"** means the schedules of assets and liabilities and the statement of financial affairs, as may be amended, filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code section 521 and Bankruptcy Rule 1007.

30.    **"Secured Claim"** means that portion of a Claim that is secured by a valid perfected lien on property of the Debtor, to the extent of the value of the interest of the holder of such Claim in such property of the Debtor, as determined by agreement between the Debtor and the holder of such Claim or by the Bankruptcy Court by a Final Order under Bankruptcy Code section 506, to the extent that it is an Allowed Claim.

31.    **"Tax"** means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

32.    **"Tax Claim"** means a Claim for any Tax entitled to priority under Bankruptcy Code section 507(a)(8) to the extent it is an Allowed Claim.

33.    **"Unclaimed Property"** means any Cash (together with any interest earned thereon) that is unclaimed within six months after such Cash is distributed, and shall include: (a) checks (and the funds represented thereby) that have been returned as undeliverable; (b) funds for checks that have not been paid or negotiated; and (c) checks (and the funds represented thereby)

-6-

that were not mailed or delivered because of the absence of a proper address to which to mail or

deliver the same.

34.   **"Unsecured Claim"** means an Allowed Claim that is not a Secured Claim,

Administrative Claim, Tax Claim, or Priority Non-Tax Claim.

B.   Terms not defined herein which are defined in the Disclosure Statement shall have

the meaning assigned to such term in the Disclosure Statement.  A term used in this Plan that is

not defined in this Plan or the Disclosure Statement but that is defined in the Bankruptcy Code or

Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the

Bankruptcy Rules.

## ARTICLE II
## ADMINISTRATIVE CLAIMS AND ALLOWED TAX CLAIMS

A.   **Administrative Claims.**  Administrative Claims are not classified under this Plan

and have no right to accept or reject this Plan.  Each Entity holding an Allowed Administrative

Claim shall be paid (1) in full in Cash on the later of (a) the Effective Date and (b) the date of the

entry of a Final Order allowing and determining such Administrative Claim, or (2) on such other

less favorable terms as may be agreed to by and among the Debtor and such Entity; provided,

however, that Administrative Claims representing liabilities incurred by the Debtor in the

ordinary course of its business during the Case shall be paid by the Debtor in accordance with the

terms and provisions of the particular transactions and agreements relating thereto.

B.   **Allowed Tax Claims.**  Allowed Tax Claims are not classified under this Plan and

have no right to accept or reject this Plan.  Each Entity holding an Allowed Tax Claim shall

receive (1) at the option of the Debtor, (a) payment in full in Cash on the later of (i) the Effective

Date of this Plan and (ii) the date of entry of a Final Order allowing and determining such Tax

17469.034/501182.1

Claim, or (b) quarterly installment payments in Cash of a total value, as of the Effective Date, equal to the amount of such Allowed Tax Claim, over a period ending not later than five years after the Petition Date, or (2) payment on such other less favorable terms as may be agreed to by and among the Debtor and such Entity.

**ARTICLE III**
**DESIGNATION OF CLASSES OF CLAIMS**
**AND SPECIFICATION OF CLASSES OF**
**CLAIMS IMPAIRED UNDER THIS PLAN**

All Allowed Claims against the Debtor, other than Administrative Claims and Allowed Tax Claims, of whatever nature, are classified for all purposes, including voting (unless otherwise specified), confirmation, and distribution, as follows:

A.      **Class 1 – People's Secured Claim.**  Class 1 consists of People's Secured Claim. This Class is not impaired under and is conclusively presumed to have accepted the Plan, and the Debtor is not required to solicit acceptances from People's United Bank.

B.      **Class 2 - Allowed Priority Non-Tax Claims.**  Class 2 consists of any and all unpaid Allowed Priority Non-Tax Claims.  This Class is not impaired under and is conclusively presumed to have accepted the Plan, and the Debtor is not required to solicit acceptances from any holders of any Claims in this Class.

C.      **Class 3 - Allowed Unsecured Claims.**  Class 3 consists of all Allowed Unsecured Claims.  This Class is not impaired under and is conclusively presumed to have accepted the Plan, and the Debtor is not required to solicit acceptances from any holders of any Claims in this Class.

D.      **Class 4 – Intercompany Claims**.  Class 4 consists of Intercompany Claims.  This Class is impaired under and is entitled to vote on the Plan.

**ARTICLE IV**

17469.034/501182.1

## TREATMENT OF CLASSES OF CLAIMS

In full satisfaction and discharge of all of the Claims against the Debtor:

A.    **Class 1 – People's Secured Claim.**   On the Effective Date, the Debtor shall cure any default with respect to the People's Secured Claim that occurred before or after the commencement of the Case, other than a default of a kind specified in Bankruptcy Code section 365(b)(2); the maturity of the People's Secured Claim shall be reinstated as such maturity existed before any default; and the legal, equitable, or contractual rights to which the People's Secured Claim entitles People's United Bank shall not otherwise be altered.

B.    **Class 2 - Allowed Priority Non-Tax Claims.**   In full and complete satisfaction of its Claim, on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, each Entity holding an Allowed Priority Non-Tax Claim will receive Cash equal to the Allowed amount of such Priority Non-Tax Claim, except to the extent that such holder of an Allowed Priority Non-Tax Claim has been paid by the Debtor prior to the Effective Date and except to the extent such holder agrees to less favorable treatment.

C.    **Class 3 – Allowed Unsecured Claims**.   In full and complete satisfaction of its Claim, on the later of the Effective Date and the date such Unsecured Claim becomes an Allowed Unsecured Claim, each Entity holding an Allowed Unsecured Claim shall receive Cash equal to the Allowed amount of such Claim, except to the extent that such holder of an Allowed Unsecured Claim has been paid by the Debtor prior to the Effective Date and except to the extent such holder agrees to less favorable treatment.

D.    **Class 4 – Intercompany Claims**.   Each holder of an Intercompany Claim shall be entitled to receive payment from Reorganized Debtor pursuant to terms to be mutually agreed

-9-

upon between Reorganized Debtor and that holder of an Intercompany Claim, in full and complete satisfaction, settlement and release of and in exchange for such Intercompany Claim.

## ARTICLE V
## MEANS FOR PLAN'S IMPLEMENTATION

A.    **Debtor's Actions.**   On the Effective Date, the Reorganized Debtor shall be authorized and directed to execute and to deliver all documents and agreements and take all actions contemplated by this Plan.

B.    **Survival of Indemnification and Contribution Obligations**.   Notwithstanding anything to the contrary contained in this Plan, the obligations of the Debtor to indemnify and/or provide contribution to its present or former directors, officers, agents, employees and representatives, pursuant to the Certificate of Incorporation, By-Laws, applicable statutes or contractual obligations, in respect of all past, present and future actions, suits and proceedings against any of such directors, officers, agents, employees and representatives, based upon any act or omission related to service with, for or on behalf of the Debtor, shall not be discharged or impaired by confirmation or consummation of this Plan but shall survive unaffected by the reorganization contemplated by this Plan and shall be treated as, and deemed to be, Allowed Unsecured Claims that are unimpaired pursuant to this Plan.

C.    **Procedures for Resolving and Treating Disputed Claims.**

1.    <u>No Distributions Pending Allowance</u>.   Notwithstanding any other provision herein, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on any portion of that Claim unless and until and only to the extent such Claim becomes Allowed.

2.    <u>Resolution of Disputed Claims</u>.

a.    <u>Objections</u>.  Reorganized Debtor shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under Bankruptcy Code sections 328, 330 and 503) to make, file and prosecute objections to Claims. Reorganized Debtor shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable (unless such Claim was already the subject of a valid objection by the Debtor), but in no event shall the service of such an objection be later than one (1) year after the Effective Date, unless such date is extended by order of the Bankruptcy Court. All objections shall be litigated to a Final Order except to the extent that Reorganized Debtor elects to withdraw such objection, or Reorganized Debtor and the holder of the Disputed Claim compromise, settle or otherwise resolve any such objections, in which event they may settle, compromise or otherwise resolve any Disputed Claim without further order of the Bankruptcy Court.

b.    <u>Reserve Accounts for Disputed Claims</u>.  Reorganized Debtor shall be required to reserve (but not in a formal, segregated account) sufficient Cash for Disputed Unsecured Claims as set forth in the Plan.

c.    <u>Estimation of Claims</u>.  The Debtor may, at any time, request the Bankruptcy Court to estimate any Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtor previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim, at any time, including during litigation concerning any objection to such Claim.  In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on the Allowed amount of such Claim, as determined by the Bankruptcy Court. If the estimated amount

17469.034/501182.1

constitutes a maximum limitation on the Allowed amount of such Claim, Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

    d.  <u>Allowance of Disputed Claims</u>.  If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, Reorganized Debtor shall, as soon as practicable following the date on which the Disputed Claim becomes an Allowed Claim, except as otherwise provided herein, distribute to the holder of such Allowed Claim an amount that provides such holder with the same percentage recovery, as of such date, as holders of Claims in the class that were Allowed on the Effective Date.

    3.  <u>No Distribution in Respect of Disallowed Claims</u>.  To the extent that a Disputed Claim is expunged or reduced, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed.

    D.  **Distributions Under the Plan**.

    1.  <u>Distributions - Generally</u>.  Reorganized Debtor shall make all distributions required by the Plan.  Any payment of Cash made by Reorganized Debtor pursuant to the Plan may be made at the option of such party either by check drawn on a domestic bank or by wire transfer from a domestic bank.  Except as otherwise provided herein, any distributions or transfers by or on behalf of the Debtor under the Plan, including, but not limited to, distributions to any holder of an Allowed Claim, shall be free and clear of any liens, claims, and encumbrances, and no other entity shall have any interest — legal, beneficial, or otherwise — in assets transferred pursuant to the Plan.  Unless otherwise provided herein, any distribution to be

-12-

made by Reorganized Debtor shall be made to the extent and at the time provided in Article IV of the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents. The holder must notify Reorganized Debtor in writing of a change of address or, in the case of holders of transferred Claims only, by the filing of a proof of claim or statement pursuant to Bankruptcy Rule 3001(e) by such holder or transferee that contains an address for such holder different than the address of such holder as set forth in the Schedules. The Reorganized Debtor shall not be liable for any distribution sent to the address of record of a holder in the absence of the written change thereof as provided herein.

     2.     <u>Distributions to Holders as of Record Date.</u>  As of the close of business on the Record Date, the claims register for the Debtor shall be closed pursuant to the order approving the Disclosure Statement, and there shall be no further changes made to the identity of the record holder of any Claim. The Reorganized Debtor shall not have any obligation to recognize any transfer of any Claim occurring after the Record Date.  The Reorganized Debtor shall be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the applicable claims register at the close of business on the Record Date.

17469.034/501182.1

3.      <u>Undeliverable and Unclaimed Distributions</u>.  If any Claim holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the holder notifies Reorganized Debtor in writing of such holder's then-current address, at which time all missed distributions shall, subject to the final sentence of this paragraph, be made as soon as is practicable to such holder, without interest.  Checks issued by Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.  After such date, all such distributions shall be deemed unclaimed property under Bankruptcy Code section 347(b) and shall become unencumbered Cash of Reorganized Debtor.   The holder of any Claim for which such undeliverable distribution has been deemed unclaimed property under Bankruptcy Code section 347(b) shall not be entitled to any other or further distribution under the Plan on account of such Claim.

4.      <u>Setoffs</u>.  To the extent permitted under applicable law, Reorganized Debtor may set off against or recoup from any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the claims, rights and causes of action of any nature that the Debtor has asserted in writing against the holder of such Allowed Claim, including, without limitation, any rights under Bankruptcy Code section 502(d) and in the absence of a written objection by such holder of an Allowed Claim within thirty (30) days of the delivery of such a writing from the Debtor, it will be conclusively presumed that the requirements for disallowance of a Claim under Bankruptcy Code section 502(d) or setoff or recoupment under applicable law have been satisfied. If the holder of such Allowed Claim does timely respond to the written assertion by the

17469.034/501182.1

Debtor that setoff or recoupment against such holder of an Allowed Claim is appropriate, the party asserting such right to setoff or recoupment must seek an order of the Bankruptcy Court allowing for such setoff or recoupment; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may possess against such holder.

5.    <u>Application of Distributions</u>.   Distributions to any holder of an Allowed Claim shall be applied first to the satisfaction of the principal portion (as determined for federal income tax purposes) of any such Allowed Claim and thereafter to the remaining portion of such Allowed Claim, if any.

6.    <u>Withholding and Reporting Requirements</u>.   In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtor or any other paying agent, as applicable, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such distribution, including withholding tax obligations in respect of in-kind (non-Cash) distributions. Any party issuing any instrument or making an in-kind (non-Cash) distribution under the Plan has the right, but not the obligation, to refrain from making a distribution until the holder of the Allowed Claim, for which such

distribution is to be made, has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

E.    **PBGC Claims.**  JMH sponsors the Retirement Plan for Employees of Johnson Memorial Hospital (the "Pension Plan"), which is asserted to be a defined benefit Pension Plan covered by Title IV of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1301-1461 ("ERISA").   The Debtor and other affiliates of JMH, as members of the sponsor's controlled group (within the meaning of 29 U.S.C. § 1301(a)(13), (14)), are jointly and severally liable to contribute to the Pension Plan for the amounts necessary to satisfy ERISA's and the Internal Revenue Code's minimum funding standards ("Minimum Funding Contributions").  *See* 29 U.S.C. §§ 1082, 1083 (as to § 1083, effective for pension plans years beginning after December 31, 2007); 26 U.S.C. §§ 412, 430 (as to § 430, effective for pension plan years beginning after December 31, 2007).  The PBGC asserts that this underfunding claim will total approximately $29 million upon termination of the Pension Plan.  The Debtor and other affiliates of JMH also will be jointly and severally liable with JMH for insurance premiums that will be owed to the PBGC upon termination of the Pension Plan.  See 29 U.S.C. §§ 1306, 1307.  The PBGC asserts that this termination premium claim will total approximately $3 million.  The PBGC and JMH have reached an agreement in JMH's case providing for the treatment of both the underfunding and the termination premium claims.  The PBGC and the Debtor have agreed that after confirmation of the Debtor's Plan and the plan filed by JMH in its case (the "JMH Plan"), the Debtor will have no liability for the underfunding claim and will remain liable for the termination premium claim, but will be required to make payments on such claim only if JMH

fails to make the payments to the PBGC on account of that termination premium claim as provided in the JMH Plan.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      **Assumption and Rejection.**  Pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), all executory contracts and unexpired leases that exist between the Debtor and any person or entity shall be deemed assumed by the Debtor, as of the Effective Date, except for any executory contract or unexpired lease (1) that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date and for which the motion was filed prior to the Confirmation Date, (2) as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date and is pending as of the Effective Date, and (3) that is specifically designated as a contract or lease to be rejected in any schedule to this Plan.

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (1) the approval, pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), of the assumption of the executory contracts and unexpired leases assumed and assigned pursuant to the Plan, (2) the extension of time, pursuant to Bankruptcy Code section 365(d)(4), within which the Debtor may assume, assume and assign, or reject the unexpired leases specified in the Plan through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired leases, and (3) the approval, pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

-17-

B. **Cure of Defaults**.  The Reorganized Debtor shall pay all cure amounts, if any, to the non-Debtor parties to the executory contracts and unexpired leases assumed pursuant to the Plan by the later to occur of (i) the first Effective Date Anniversary or (ii) ten (10) days after resolution of the cure amount by Final Order or agreement of the parties, except as otherwise agreed to by the parties.  If a non-Debtor party to an executory contract or unexpired lease assumed pursuant to the Plan timely objects to the assumption or the proposed cure amount for that agreement, the Debtor and the objecting party may settle, compromise, or otherwise resolve the proper cure amount without further order of the Court or, at the Debtor's sole discretion, may submit the dispute to the Bankruptcy Court for a determination as to the proper cure amount. Notwithstanding the above, the Debtor may, in its sole and absolute discretion, determine to reject any executory contract or unexpired lease at any time prior to the later of (1) thirty (30) days after the Effective Date and (2) thirty (30) days after the entry of a Final Order determining the proper cure amount for that contract or lease. The effective date of a rejection effected pursuant to the preceding sentence shall be the Confirmation Date regardless of the date on which the Debtor gives notice of such rejection.

C. **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to of the Plan must be filed with the Bankruptcy Court and served upon the Debtor or, on and after the Effective Date, Reorganized Debtor, no later than thirty (30) days after the later of (1) the date notice of entry of an order is mailed approving the rejection of such executory contract or unexpired lease, and (2) the date notice of entry of the Confirmation Order is mailed.  All such Claims not filed within such time will be

-18-

forever barred from assertion against the Debtor and its estate or the Reorganized Debtor and its property.

D.    **Insurance Policies**.  All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as executory contracts under the Plan. Nothing contained herein shall constitute or be deemed a waiver of any cause of action that the Debtor may hold against any entity, including, without limitation, the insurer under any of the Debtor's policies of insurance.

## ARTICLE VII
## EFFECTIVE DATE

A.    **Conditions Precedent to the Effective Date**.   The following are conditions precedent to the Effective Date of the Plan:

1.     The Bankruptcy Court shall have entered the Confirmation Order, which shall approve the Plan on substantially the same terms and conditions set forth herein, which shall be in form and substance satisfactory to the Debtor;

2.     No stay of the Confirmation Order shall then be in effect at the time the other conditions set forth herein are satisfied or waived;

3.     All documents, instruments and agreements, in form and substance satisfactory to the Debtor, provided for under or necessary to implement the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby;

4.     All of the payments to be made by the Debtor by or on the Effective Date shall have been made or will be made on the Effective Date;

5.     The Debtor shall have Cash available to make all payments required on the Effective Date; and

6.     The Debtor shall have obtained all governmental and other regulatory approvals or rulings that the Debtor believes, in its reasonable discretion, are necessary for consummation of the Plan.

B.     **Waiver of Conditions**.  The Debtor may waive one or more of the conditions precedent to the Effective Date of the Plan set forth herein.

C.     **Effect of Failure of Conditions**.  In the event that one or more of the conditions specified herein have not occurred and have not been waived on or before the date that is sixty (60) days after the Confirmation Date, (1) the Confirmation Order shall be vacated, (2) no distributions under the Plan shall be made, (3) the Debtor and all holders of Claims shall be restored to the status quo ante as of the date immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (4) the Debtor's obligations with respect to Claims shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or will prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**ARTICLE VIII**
**EFFECT OF CONFIRMATION OF PLAN**

A.     **Vesting of Assets**.  As of the Effective Date, the property of the Debtor's estate, including all claims and causes of action against third parties that arose prior to or after the Petition Date, shall vest in the Debtor or such other entity as provided in the Plan.  From and after the Effective Date, the Debtor may dispose of its assets free of any restrictions of the

Bankruptcy Code, but in accordance with the provisions of the Plan.  As of the Effective Date, all assets of the Debtor shall be free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided in the Plan or the Confirmation Order.

B.    **Binding Effect**.    Except as otherwise provided in Bankruptcy Code section 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor and its successors and assigns, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan. The rights, benefits and obligations of any entity named or referred to in the Plan whose actions may be required to effectuate the term of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for the Debtor under chapters 7 or 11 of the Bankruptcy Code).

C.    **Discharge**.  Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor and the Reorganized Debtor, to the fullest extent permitted by Bankruptcy Code section 1141, of and from any and all Claims, rights, and liabilities that arose prior to the Confirmation Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to Bankruptcy Code section 524, from prosecuting or asserting any such discharged Claim against Debtor or the Reorganized Debtor.

D.    **Exculpation**.  The Debtor, the Committee, and the Released Parties, and any property of or professionals retained by such parties, or direct or indirect predecessor in interest

to any of the foregoing persons, shall not have or incur any liability to any Person for any act

taken or omission, after the Petition Date, in connection with or related to the Case or the

operations of the Debtor's business during the Case, including but not limited to (1) formulating,

preparing, disseminating, implementing, confirming, consummating or administrating the Plan

(including soliciting acceptances or rejections thereof); (2) the Disclosure Statement or any

contract, instrument, release or other agreement or document entered into or any action taken or

omitted to be taken in connection with the Plan; or (3) any distributions made pursuant to the

Plan, except for acts constituting willful misconduct, gross negligence, or bad faith, and in all

respects such parties shall be entitled to rely upon the advice of counsel with respect to their

duties and responsibilities under the Plan.

      E.    **Releases**.  As of the Effective Date, the Released Parties shall be released by the

Debtor and any successors-in-interest of the Debtor from any and all Claims, debts, obligations,

rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether

known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter

arising, at law, in equity, or otherwise, that the Debtor would have been legally entitled to assert

in its own right (whether individually or collectively) or that any holder of a Claim or other

person or entity would have been legally entitled to assert on behalf of the Debtor or its estate,

based in whole or in part upon any act or omission, transaction, agreement, event, or other

occurrence taking place before or on the Effective Date, except for acts constituting willful

misconduct, gross negligence, or bad faith occurring during the Case and, in all respects such

parties shall be entitled to rely upon the advice of counsel with respect to their duties and

responsibilities under the Plan. Without limiting the generality of the foregoing, to the extent

permitted by law, the Debtor and any successors-in-interest of the Debtor shall waive all rights

under any statutory provision purporting to limit the scope or effect of a general release, whether

due to lack of knowledge or otherwise.

F.    **Injunction**.  Subject to the provisions of this Plan, all Persons or entities who

have held, hold, or may hold Claims against the Debtor and other parties in interest, along with

their respective present or former employees, agents, officers, directors, or principals, are

permanently enjoined, on and after the Effective Date, with respect to all Claims against the

Debtor from (1) commencing, conducting, or continuing in any manner, directly or indirectly,

any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in

a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the

Reorganized Debtor, the Released Parties, or their property, (2) enforcing, levying, attaching

(including, without limitation, any prejudgment attachment), collecting, or otherwise recovering

by any manner or means, whether directly or indirectly, any judgment, award, decree, or order

against the Debtor, the Reorganized Debtor, the Released Parties, or their property, (3) creating,

perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any

kind against the Debtor, the Reorganized Debtor, the Released Parties, or against the property or

interests in property of the foregoing, (4) asserting any right of setoff, directly or indirectly,

against any obligation due the Debtor, the Reorganized Debtor, the Released Parties, or any of

their property, except as contemplated or allowed by the Plan, the Bankruptcy Code, or

applicable law, (5) acting or proceeding in any manner, in any place whatsoever, that does not

conform to or comply with the provisions of the Plan, (6) commencing, continuing or asserting

in any manner any action or other proceeding of any kind with respect to any Claims and causes

17469.034/501182.1

of action which are extinguished or released pursuant to the Plan, and (7) taking any actions to interfere with the implementation or consummation of the Plan.  All Persons are permanently enjoined, on and after the Effective Date, from asserting any Claim which is released by such Person under the Plan or for which the party against whom the Claim is being asserted has received exculpation under the Plan, including: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) on account of such Claim, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order on account of such Claim, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of such Claim, (iv) asserting any right of setoff, directly or indirectly, against any obligation on account of such claim, (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan, (vi) commencing, continuing or asserting in any manner any action or other proceeding of any kind with respect to any such Claim, and (vii) taking any actions to interfere with the implementation or consummation of the Plan.

G.    **Term of Injunctions or Stays**.  Unless otherwise herein, all injunctions or stays provided for in this Case pursuant to Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the entry of a final order closing this Case.

17469.034/501182.1

H.    **Compromise of Controversies**.    Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, its estate, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

I.    **Retention of Causes of Action/Reservation of Rights**.    Except as expressly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or causes of action that the Debtor or the Reorganized Debtor may have or choose to assert on behalf of its estate under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (1) any and all Claims against any person or entity, to the extent such person or entity asserts a cross-claim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, its officers, directors, or representatives, (2) any and all claims under chapter 5 of the Bankruptcy Code and (3) the turnover of any property of the Debtor's estate.    Except as expressly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, cause of action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Debtor and the Reorganized

-25-

Debtor shall have, retain, reserve, and be entitled to assert all such Claims, causes of action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Case had not been commenced, and all of the Debtor's and the Reorganized Debtor's legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Case had not been commenced. The Reorganized Debtor shall, after the Effective Date, retain the rights to bring any causes of action that could have been brought by the Debtor at any time.

J.    **Section 506(c) Reservation**. The Debtor and the Reorganized Debtor reserve all rights under Bankruptcy Code section 506(c) with respect to any and all Secured Claims.

## ARTICLE IX
## DEBTOR'S REQUEST PURSUANT TO BANKRUPTCY CODE § 1129(b)

If all of the applicable requirements of Bankruptcy Code section 1129(a), other than section 1129(a)(8) thereof, are met with respect to this Plan, the Debtor requests that the Bankruptcy Court, pursuant to section 1129(b), confirm this Plan notwithstanding the requirements of section 1129(a)(8) if this Plan does not discriminate unfairly and is fair and equitable with respect to each class.

## ARTICLE X
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case and any of the proceedings arising from, or relating to, the Case pursuant to Bankruptcy Code section 1142 and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purposes and intent of this

Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall

retain jurisdiction for the following purposes: (1) to hear and determine any and all objections to

the allowance, or requests for estimation, of Claims; (2) to consider and act on the compromise

and settlement of any Claim against, or cause of action on behalf of, the Debtor and the Debtor's

estate; (3) to determine any and all applications pending on the Confirmation Date for the

rejection and disaffirmance, assumption or assignment of executory contracts or leases and the

allowance of any Claim resulting therefrom; (4) to enter such orders as may be necessary or

appropriate in connection with the recovery of the Debtor's assets or property wherever located;

(5) to hear and determine any and all applications for allowance of compensation and

reimbursement of expenses; (6) to hear and determine any and all controversies, suits and disputes

arising under or in connection with the interpretation, implementation or enforcement of this Plan

and any of the documents intended to implement the provisions of this Plan; (7) to hear and

determine any and all applications, adversary proceedings, contested matters and other litigated

matters pending on the Effective Date or that may be commenced thereafter as provided in this

Plan; (8) to hear and determine any applications to modify any provision of this Plan to the full

extent permitted by the Bankruptcy Code; (9) to correct any defect, cure any omissions or

reconcile any inconsistency in this Plan, or any order of the Bankruptcy Court, including the

Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan; (10) to

effectuate distributions under and performance of the provisions of this Plan; (11) to hear and

determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax

benefits and similar and related matters with respect to the Debtor relating to the administration of

the Case, including, without limitation, matters involving federal, state and local taxes in

17469.034/501182.1

accordance with Bankruptcy Code sections 346, 505 and 1146; (12) to determine such other matters and for such other purposes as may be provided in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; (13) to enforce all orders, judgments, injunctions, releases and rulings issued or entered in connection with the Case or this Plan; (14) to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of this Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated; (15) to determine any other matter not inconsistent with the Bankruptcy Code; and (16) to enter an order closing the Case.

**ARTICLE XI**
**MODIFICATION OR WITHDRAWAL OF THIS PLAN**

A.    **Modification of this Plan**. This Plan may be altered, amended or modified by the Debtor before or after the Confirmation Date, as provided in Bankruptcy Code section 1127.

B.    **Withdrawal of this Plan**.  The Debtor reserves the right to revoke and withdraw this Plan at any time before the Confirmation Date.  If the Debtor revokes or withdraws this Plan, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.

**ARTICLE XII**
**MISCELLANEOUS**

17469.034/501182.1

A.  **Governing Law.**  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut.

B.  **Headings.**  The headings of the articles, paragraphs, and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

C.  **Severability.**  Should any provision in this Plan be determined to be invalid, void or unenforceable, such determination shall in no way limit, affect, impair or invalidate the enforceability and operative effect of any or all other provisions of this Plan.

D.  **Computations.**  Any calculation of days shall exclude the first date and include the last date of the relevant period.

E.  **Miscellaneous Rules of Construction.**  (1) The words "herein," "hereof," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection or clause, unless the context requires otherwise; (2) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, or neuter; (3) accounting terms not otherwise defined in this Plan shall have the meanings assigned to them under generally accepted accounting principles currently in effect; and (4) the rules of construction set forth in Bankruptcy Code section 102 shall apply, unless superseded herein or in the Confirmation Order.

F.  **Confirmation Order and Plan Control.**  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, this Plan controls the Disclosure Statement, and the Confirmation Order (and any other orders of the Bankruptcy Court) controls

this Plan.  In the event the terms or provisions of this Plan are inconsistent with the terms and provisions of the exhibits to this Plan or documents executed in connection with this Plan, the terms of this Plan shall control.

G.    **Successors and Assigns.**   The rights, benefits, and obligations of any person or Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such person or Entity.

H.    **No Waiver.**   The failure of the Debtor to object to a Claim for purposes of voting on this Plan shall not be deemed a waiver of the Debtor's right to object to or examine such Claim, in whole or in part.

I.    **Notices.**   All notices and requests in connection with this Plan shall be in writing and shall be hand delivered or sent by mail to:

Johnson Memorial Corporation
c/o Reid and Riege, P.C.
One Financial Plaza
Hartford, CT 06103
ATTN:  Eric Henzy, Esq.
*Counsel to the Debtor*

Zeisler & Zeisler, P.C.
558 Clinton Avenue
P.O. Box 3186
Bridgeport, CT  06605-0186
ATTN:  Craig I. Lifland, Esq.
*Counsel to the Creditors' Committee*

17469.034/501182.1

Dated at Stafford and Hartford, Connecticut, this 11th day of March, 2010.

JOHNSON MEMORIAL
CORPORATION

By /s/ Peter J. Betts
   Peter J. Betts, LFACHE
   Interim President & CEO

By /s/ Eric Henzy
   Eric Henzy
   Federal Bar No. ct12849
   Reid and Riege, P.C.
   One Financial Plaza
   Hartford, CT  06103
   (860) 278-1150
   Fax: (860) 240-1002
   ehenzy@reidandriege.com
   Its Attorneys